[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

EDWIN MARTINEZ
(Full name under which convicted)
PETITIONER

(Prisoner Number)

    vs.

 ANTHONY WILLS
(Warden, superintendent, or authorized person having custody of petioner)
RESPONDENT, and

**(Fill in the following blank <u>only</u> if judgment attacked imposes a sentence to commence in the future.)**

ATTORNEY GENERAL OF THE STATE OF
    Illinois
(State where judgment entered)

Case Number: _____
    (Supplied by Clerk of this Court)

Case Number of State Court Conviction:

No. 01 CR 2607

## PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY

1. Name and location of court where conviction entered:
   Circuit Court of Cook County, Illinois Criminal Division

2. Date of judgment of conviction:
   Date of Conviction: July 16, 2003; Notice of Appeal filed: January 8, 2004 following the sentencing hearing

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
   First Degree Murder

4. Sentence(s) imposed:
   50 Years in prison

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

1

Rev. 06/29/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5. What was your plea? (Check one)  ☒ Not guilty  ☐ Guilty  ☐ Nolo contendere
   If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

   _____

## PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):  ☐ Jury  ☒ Judge only

2. Did you testify at trial?  ☐ Yes  ☒ No

3. Did you appeal from the conviction or the sentence imposed?  ☒ Yes  ☐ No

   (A)  If you appealed, give the

        (1) Name of court: Appellate Court of Illinois, First Judicial District

        (2) Result: Affirmed

        (3) Date of ruling: July 5, 2006

        (4) Issues raised: Petitioner argued that 1.) The trial court erred in admitting his oral statement to the police over his objection
        Under the admission exception to the hearsay rule 2.) the evidence was insufficient to sustain his conviction; and 3.) he was denied his constitutional
        right of confrontation because trial counsel agreed to stipulated evidence in his absence.

   (B)  If you did not appeal, explain briefly why not: _____

        _____

4. Did you appeal, or seek leave to appeal, to the highest state court?  ☒ Yes  ☐ No

   (A)  If yes, give the

        (1) Result: Denied

        (2) Date of ruling: November 29, 2006

        (3) Issues raised: _____

        _____

        _____

   (B)  If you did not appeal, explain briefly why not: _____

        _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

2

Rev. 06/29/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5. Did you petition the United States Supreme Court for a writ of *certiorari*?
   ☐ Yes   ☒ No

If yes, give (A) date of petition: _____

(B) Date *certiorari* was denied: _____

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?
   ☒ Yes   ☐ No

With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

A. Name of court: Circuit Court of Cook County

B. Date of filing: July 24, 2007

C. Issues raised: Ineffective Assistance of Trial Counsel

D. Did you receive an evidentiary hearing on your petition?   ☒ Yes   ☐ No

E. What was the court's ruling? See attached document

F. Date of court's ruling: See attached document

G. Did you appeal from the ruling on your petition?   ☒ Yes   ☐ No

H. (a) If yes, (1) what was the result? See attached document

(2) date of decision: See attached document

(b) If no, explain briefly why not: See attached document

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/29/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I. Did you appeal, or seek leave to appeal this decision to the highest state court?

☒ Yes    □ No

(a) If·yes, (1) what was the result? _See attached document_____

                 (2) date of decision: _____

(b) If no, explain briefly why not:_____

_____

_____

_____

_____

_____

_____

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?

□ Yes    ☒ No

A. If yes, give the following information with respect to each proceeding (use additional sheets if necessary):

1.     Nature of proceeding_____

2.     Date petition filed _____

3.     Ruling on the petition _____

4.     Date of ruling _____

5.     If you appealed, what was the ruling on the appeal? _____

6.     Date of ruling on appeal _____

7.     If there was a further appeal, what was the ruling? _____

8.     Date of ruling on appeal _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/29/2016

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**? ☐ Yes ☒ No

   A. If yes, give name of court, case title and case number: _____

      _____

   B. Did the court rule on your petition? If so, state

      (1) Ruling: _____

      (2) Date: _____

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition? ☐ Yes ☒ No
If yes, explain:_____

_____

_____

_____

_____

_____

_____

_____

## PART III – PETITIONER'S CLAIMS

1. State briefly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

   **BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

   (A)   Ground one <u>See attached memorandum</u> _____
        Supporting facts (tell your story briefly without citing cases or law):

        _____

        _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

_____

_____

_____

_____

(B)  Ground two  see attached memorandum_____
     Supporting facts:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(C)  Ground three_____
     Supporting facts:

_____

_____

_____

_____

_____

_____

_____

_____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

6

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

(D)    Ground four _____
       Supporting facts:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

2.     Have all grounds raised in this petition been presented to the highest court having
       jurisdiction?

       ☒  Yes☐  No

3.     If you answered **"NO"** to question (2), state <u>briefly</u> what grounds were not so presented and
       why not:

_____

_____

_____

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following
stages of the judgment attacked herein:

(A)    At preliminary hearing _____

(B)    At arraignment and plea _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

7

(C)    At trial  Joseph Lopez _____

(D)    At sentencing  Joseph Lopez _____

(E)    On appeal  Office of the State Appellate Defender _____

(F)    In any post-conviction proceeding  Cook County Public Defender and The Exoneration Project

(G)    Other (state): _____


## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

☐ Yes    ☒ No

Name and location of the court which imposed the sentence: _____

_____

Date and length of sentence to be served in the future _____

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _____         _____
                  (Date)                              Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

                                            _____
                                            (Signature of petitioner)

                                            _____
                                            (I.D. Number)

                                            _____

                                            _____

                                            (Address)


[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

8

EDWIN MARTINEZ COLLATERAL PROCEEDINGS

Petitioner Edwin Martinez filed a timely *pro se* postconviction petition on July 24, 2007. Petitioner was appointed counsel and his petition was supplemented. The Circuit Court then dismissed the petition without an evidentiary hearing on September 2, 2011. On November 21, 2014, the Appellate Court reversed the circuit court's dismissal of the post-conviction petition and remanded for an evidentiary hearing. *See* Ex. 2 (*Martinez II*). There were no appeals to the Illinois Supreme Court of this ruling.

Following an evidentiary hearing on remand, the Circuit Court again dismissed the post-conviction petition on June 16, 2017. *See* Ex. 3 (*Martinez III*, at ¶ 45). In an order on September 20, 2019, the Appellate Court remanded for further proceedings on the post-conviction petition. *See* Ex. 3. There were no appeals to the Illinois Supreme Court of this ruling.

After further proceedings on remand, on September 4, 2020 the Circuit Court again dismissed the post-conviction petition. *See* Ex. 4 (*Martinez IV*). Petitioner again appealed, and on May 14, 2021, the Appellate Court affirmed. No petition for rehearing was filed. Petitioner sought leave to appeal to the Illinois Supreme Court, but leave was denied on September 29, 2021.

IN THE UNITED STATES COURT DISTRICT COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| EDWIN MARTINEZ, Reg. No. R27255 | ) | |
| | ) | |
| PETITIONER, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY WILLS, Warden, | ) | |
| Superintendent, or authorized person having | ) | Case Number of State Court Conviction |
| custody of petitioner, | ) | No. 01 CR 02607(01) |
| | ) | |
| RESPONDENT. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF EDWIN MARTINEZ'S PETITION FOR
WRIT OF HABEAS CORPUS**

Debra Loevy
Joshua Tepfer
The Exoneration Project
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 789-4955
*Counsel for Petitioner*

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

*Strickland v. Washington* ..............................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ......................................................2

    **I.**    **The Relevant Evidence Below** ................................................................3

    **II.**   **The Relevant Portions of the Appellate Court Ruling**
          **Adjudicating Edwin Martinez's Petition for Post-Conviction Relief**....................8

*Strickland v. Washington*, 466 U.S. 668 (1984) ......................................................8, 9

*People v. Smith*, 2012 IL App (1st) 102354 ................................................................8

*People v. Perry*, 224 Ill.2d 312 (2007) .......................................................................9

ARGUMENT ..................................................................................................................10

    **I.**    **Legal Standards for Adjudicating this Petition** ...................................10

          **A.  The Standards for *Habeas* Relief** .................................................10

28 U.S.C. § *2242* et seq................................................................................................10

*Dunn v. Jess*, 981 F.3d 582 (7th Cir. 2020) ...............................................................11

*Mosley v. Atchison*, 689 F.3d 838 (7th Cir. 2012) .....................................................11

*Williams v. Taylor*, 529 U.S. 362 (2000) ...................................................................11

*Cullen v. Pinholster*, 563 U.S. 170 (2011)..................................................................11

*People v. Martinez,* 2021 IL App (1st) ........................................................................11

*People v. Martinez*, 175 N.E.3d 97 (2021) ..................................................................11

          **B.  The Standard for Ineffective Assistance of Counsel**
               **Claims Under *Strickland***................................................................11

*Campbell v. Reardon*, 780 F.3d 752 (7th Cir. 2015) ............................................11, 12

*Strickland v. Washington*, 466 U.S. 668 (1984) ....................................................*Passim*

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) .........................................................12

*Jones v. Calloway*, 842 F.3d 454 (7th Cir. 2016) .......................................................12

i

*Mosley v. Atchison*, 689 F.3d 848 (7th Cir. 2012) ..........................................................................12

*Williams v. Taylor*, 529 U.S. 395 (2000) .................................................................................11, 12

*Washington v. Smith*, 219 F.3d 620 (7th Cir. 2000) ................................................................13, 14

*Davis v. Lambert*, 388 F.3d 1052 (7th Cir. 2004) ........................................................................13

*United States ex rel. Hampton v. Leibach*, 347 F.3d 219 (7th Cir. 2003) ....................................13

*Dunn v. Jess*, 981 F.3d (7th Cir. 2020) ..............................................................................11, 13, 14

*Stitts v. Wilson*, 713 F.3d 887 (7th Cir. 2013) ...............................................................................13

*Williams v. Taylor*, 529 U.S. (2000) .............................................................................................14

*Harrington v. Richter*, 562 U.S. 86 (2011) ..................................................................................14

**II.    Grounds for Relief** ...........................................................................................................14

**Ground 1: The State Court's Decision to Affirm Denial of Petitioner's Ineffective Assistance of Trial Counsel Claim Was an Unreasonable Application of *Strickland*** ........................................................................................14

**A.  The State Court's Deficiency Adjudications Incorporate an Unreasonable Application of *Strickland*** ..................................................14

**1.  The State Court's Failure to Find Deficient Performance in Counsel's Inability to Provide a Foundation for Admission of the Crucial Restaurant Receipt Was an Unreasonable Application of *Strickland*** ....................................14

*Dixon v. Snyder*, 266 F.3d 693 (7th Cir. 2001) ............................................................................15

*Strickland v. Washington*, 466 U.S. (1984) .................................................................................15

**2.  The State Court's Failure to Find Defense Counsel Deficient— Where Counsel Recognized Rachel Narbaiz as a Key Witness in This Closely Balanced Case, But Then Failed to Call Her at Trial—Was Also an Unreasonable Application of *Strickland***........15

*Jones v. Calloway*, 842 F.3d (7th Cir. 2016) ...............................................................................16

*Strickland v. Washington*, 466 U.S. 668 (1984) .....................................................................16, 17

*United States ex rel. Hampton v. Leibach*, 347 F.3d 219 (7th Cir. 2003) ....................................16

*Washington v. Smith*, 219 F.3d 630 (7th Cir. 2000) ....................................................16

*Davis v. Lambert*, 388 F.3d 1062 (7th Cir. 2004) ........................................................16

*Dunn v. Jess*, 981 F.3d 592 (7th Cir. 2020) ...................................................................16

*Stitts v. Wilson,* 713 F.3d 891 (7th Cir. 2013)...............................................................16

       **3.   Reasonable Application of *Strickland* Also Required the
           State Court to Find Counsel Deficient for Failing to Present
           Maritza and Pablo Amaya** ...............................................................17

*Strickland v. Washington*, 466 U.S. 668 (1984) ...........................................................17

*Raygoza v. Hulick*, 474 F.3d 958 (7th Cir. 2007) .........................................................17

      **B.  The Appellate Court's Piecemeal and Erroneous Adjudication of
          Prejudice Was an Unreasonable Application of *Strickland*** ......................18

*Strickland v. Washington*, 466 U.S. 668(1984) ................................................18, 23, 24

*Malone v. Walls*, 538 F.3d 744 (7th Cir. 2008) ......................................................18, 23

*Williams v. Taylor*, 684 U.S. (2000) ............................................................................18

*United States v. Cervantes-Pacheco*, 826 F.2d 310 (5th Cir. 1987)............................19

Judge Stephen S. Trott, *Words of Warning for Prosecutors Using Criminals As Witnesses*,
47 Hastings L.J. 1381 (1996)........................................................................................19

David A. Harris, *Snitching: Criminal Informants and the Erosion of American Justice*,
Crim. Just., Spring 2010 ...............................................................................................19

Eli Paul Mazur, *Rational Expectations of Leniency: Implicit Plea Agreements
and the Prosecutor's Role As A Minister of Justice*, 51 Duke L.J. 1333 ......................19

*Lee v. United States*, 343 U.S. 747 (1952).....................................................................19

*Harris v. Reed*, 894 F.2d 871 (7th Cir. 1990) ...............................................................21

*United States ex rel. Hampton v. Leibach*, 347 F.3d 219 (7th Cir. 2003) ....................23

*U.S. v. Miller*, 547 F.3d 718 (7th Cir. 2008)..................................................................24

**Ground 2: The State Court's Definition of Deficient Performance Was, in and of Itself, Contrary to or an Unreasonable Application of *Strickland*** ..............24

*People v. Smith*, 2012 IL App (1st) 102354...................................................................24

*People v. Perry*, 224 Ill.2d 312 (2007) ........................................................................24

*Strickland v. Washington*, 466 U.S. (1984) ............................................................24, 25

*Jones v. Calloway*, 842 F.3d 454 (7th Cir. 2016) ....................................................24, 25

*Mosley v. Atchison*, 689 F.3d 848 (7th Cir. 2012) ........................................................25

*United States ex rel. Hampton v. Leibach*, 347 F.3d 219 (7th Cir. 2003) ....................25

*Lewis v. Zatecky*, 993 F.3d 994 (7th Cir. 2021)...........................................................25

*McDowell v. Kingston*, 497 F.3d 757 (7th Cir. 2007)...................................................25

**CONCLUSION** .........................................................................................................25

*Strickland v. Washington*, 466 U.S. 668 (1984) ..........................................................25

## INTRODUCTION

The testimony of a single, unindicted co-conspirator who Petitioner's own trial defense counsel *believes* to be a liar has left Petitioner in prison for two decades, where, unless the federal courts intervene, he will remain for the next 30 years. Yet that same defense counsel had a range of readily-available evidence to present that would have actually *proven* this witness a liar. Despite acknowledging its importance and promising it to the trier-of-fact in opening statements, defense counsel failed to present it.

The various explanations for denying relief proffered by the state appellate court are plainly contrary to *Strickland v. Washington* and Petitioner's rights to effective assistance of counsel. The federal courts must intervene to ensure Petitioner receives a new trial that conforms to his constitutional rights.

## FACTUAL AND PROCEDURAL BACKGROUND

During opening statements at Petitioner's bench trial for the murder of Robert Sanchez, Petitioner's trial counsel told the trier of fact that he would present two crucial pieces of evidence: (1) a receipt that demonstrated that Sanchez was alive and eating at Aguascalientes restaurant at 8:24 p.m. on December 27, 2000, which counsel called "the most telling piece of evidence that has been completely overlooked," in the context of a case where the murder was alleged to have been committed between 7:50 p.m. and 9:42 p.m. on that day (Sup5 R. 69); and (2) testimony from Rachel Narbaiz, who would have directly contradicted the State's lone inculpatory witness's claim that Petitioner solicited Sanchez's murder and had a motive (Sup5 R. 73-74).[1] Defense counsel, however, presented neither piece of evidence.

Petitioner brought a timely post-conviction petition contending that his attorney was constitutionally ineffective for, *inter alia*, failing to present this evidence after acknowledging its importance to the case in opening argument. In the context of what the First District Appellate Court previously called a closely balanced, circumstantial case that rose or fell on the credibility of a single witness, *see Martinez II* at ¶¶ 34, 45, who had himself been an original suspect in the murder, Petitioner argued he was prejudiced by his attorney's ineffective assistance. The circuit court denied post-conviction relief after a third-stage evidentiary hearing, and the Illinois Appellate Court affirmed. *Martinez IV*, at ¶ 1. On September 29, 2021, the Illinois Supreme Court denied leave to appeal. Ex. 5

---

[1] The record is included as Exhibit 6 to this filing. The citations to the record refer to what is marked on the record within this exhibit. The remaining exhibits to this petition are as follows:
Exhibit 1: People v. Martinez, No. 1-04-0126 (July 5, 2006) (Martinez I)
Exhibit 2: People v. Martinez, 2014 IL App (1st) 112794-U (Nov. 21, 2014) (Martinez II)
Exhibit 3: *People v. Martinez*, 2019 IL App (1st) 171533-U (Sept. 20, 2019) (*Martinez III*)
Exhibit 4: *People v. Martinez*, 2021 IL App (1st) 171533-UB (May 14, 2021) (*Martinez IV*)
Exhibit 5: *People v. Martinez*, 175 N.E.3d 97, (Sept. 29, 2021), (Martinez, PLA denial)

## I.     The Relevant Evidence Below

On the evening of December 28, 2000, the body of 17-year-old Robert Sanchez was found in the Sundown Meadow Forest Preserve in Cook County. An autopsy showed that Sanchez had been shot in the head four times. A brief investigation into the death culminated in the early January 2001 arrest of Petitioner Edwin Martinez on first-degree murder charges.

The trial evidence in this case was summarized by the appellate court during several appeals throughout post-conviction proceedings. The appellate court described the State's case against Petitioner as "largely circumstantial," explaining that "[t]here was no physical evidence nor eyewitnesses linking defendant to the crime and no confession." *Martinez II* at ¶ 38. The court specifically found the case "was closely balanced" and that the case relied "heavily on the testimony and credibility" of the State's problematic star witness, Adam Reyes. *Id.* at ¶ 45.

Reyes was not only a drug dealer, convicted felon, and long-time Satan's Disciple gang member who seemed thoroughly inured to gang violence (he openly admitted that he occasionally shot his gun at opposing gang members). *Id.* at ¶ 38; Sup5 R 143, 147, 171, 183. Reyes was also the original suspect arrested for this murder, and his testimony accusing Petitioner made him an uncharged accomplice. *See Martinez II* at ¶ 38 (the appellate court discussing the "grounds to question Mr. Reyes' credibility (*e.g.*, he was a convicted felon *and an accomplice to the murder* by providing defendant with the gun," according to Reyes' testimony) (emphasis added)); Sup5 R. 187-88 (Reyes was involuntarily "dragged" in for questioning on this murder and *Mirandized* before he made a statement inculpating Petitioner). *See also* C. 469 (Reyes allegedly badgered a source to give him the gun the week before the shooting); Sup5 R. 153, 158-59, 194 (Reyes claimed that he then gave that gun to Petitioner to kill Sanchez).

3

Reyes expressly admitted that he came to an agreement with the Cook County State's Attorney's office that he would not be charged with murder in this case in exchange for his testimony as Petitioner's only accuser. Sup5 R. 172; C. 751 at ¶ 3; *Martinez II* at ¶ 5; Sup5 R. 211. True to the agreement, Reyes was never charged for his role in the murder or with any crimes related to Sanchez's death. Sup5 R. 580.

As the only purported motive witness, Reyes testified that in the month leading up to Sanchez's death, Petitioner solicited Reyes to kill Sanchez. *Martinez II* at ¶ 3. Specifically, Reyes claimed that while sitting in Rachel Narbaiz's car on Christmas Eve—four days before Sanchez's death was discovered—Petitioner asked both Reyes and Narbaiz to kill Sanchez. *Id.* According to Reyes, both refused, and Narbaiz told Petitioner to leave. *Id.* Reyes also testified that shortly before Sanchez's murder, Narbaiz told Reyes that Sanchez owed Petitioner money. Sup5 R. 209, 212.

On post-conviction, in contrast, Rachel Narbaiz testified that she has no stake in this case—she has not spoken to Petitioner or Reyes in 16 years—but she unequivocally denied Reyes' trial testimony that Petitioner asked her and Reyes to kill Sanchez and that Reyes and she discussed Sanchez owing Petitioner money. R. 431-32. This testimony denying Reyes' claims was consistent with what: Narbaiz told the police back in 2000 (C. 109-10); she told Cook County investigators in 2002 (C. 503-04); and she stated in a post-conviction affidavit in 2010 (C. 505-06). Although defense counsel discussed her anticipated testimony in opening argument, he did not call Narbaiz to testify at trial. She testified on post-conviction that she had never been contacted by or spoken to defense counsel, but she would have been willing to testify. C. 473; R. 431-34, 609.

The remaining evidence inculpating Petitioner, was also reliant on Reyes, who established a one hour and fifty-minute window or less on December 27, 2000, during which the State alleged Petitioner killed Sanchez (whose time of death was otherwise unknown during a two-day span). *Martinez II* at ¶ 42; *Martinez IV* at ¶ 12. According to Reyes, Petitioner phoned him that night at approximately 7:30 p.m., asking for a gun. *Martinez IV* at ¶ 5. Reyes testified that 20-30 minutes later Petitioner arrived at his home in Cicero, Illinois, and picked up a gun. Sup5 R. 157-58; *Martinez IV* at ¶ 5. According to Reyes, he and Petitioner spoke on the porch, when Petitioner purportedly explained that he planned to lure Sanchez into the woods. *Id.* at ¶ 5. Reyes said he could see Sanchez in the car when Petitioner drove off. *Id.*

Reyes testified that Petitioner phoned him again at about 9:40 p.m. *Id.* According to Reyes, during that call Petitioner admitted he had just killed Sanchez. *Id.* Phone records indicate Reyes received a call from Sanchez's phone at 9:42 p.m. *Id.* at ¶ 14.[2] Thus, according to the State at trial, even though Sanchez's body was not found until the evening of December 28th, Reyes' version of the murder meant that it necessarily happened sometime after 7:50 p.m. and before 9:42 p.m. on December 27th.

From opening statements through closing arguments, Petitioner's trial defense counsel made his strategy very clear: Adam Reyes was lying. R. 543-44; Sup5 R. 73, 484, 522. In addition to foreshadowing Narbaiz's testimony to discredit Reyes and then failing to present her,

---

[2] Two State witnesses testified that when they called Sanchez that night after 9:30 p.m., Petitioner answered the phone. *Martinez IV* at ¶ 8-9. Both testified that Petitioner told them that Sanchez had left his phone with him, one remembering that Petitioner said Sanchez lent him the phone, while the other remembering that Petitioner said Sanchez forgot his phone in Petitioner's car. *Id.* A third witness testified that Petitioner gave the phone to her to return to Sanchez. *Id.* The evidence suggested that this was not unusual—Petitioner and Sanchez were former roommates and close friends. *Martinez IV* at ¶ 13. Moreover, it is only Reyes' testimony suggests that any of these calls occurred after Sanchez had been murdered—if Reyes' testimony is not credited, Sanchez could have been killed any time the following day. *Id.* at ¶ 12.

counsel also argued in opening statements that the State could not prove a credible timeline because there was not enough time for Petitioner to have accomplished the killing during the window when Reyes claimed it occurred. *Martinez II* at ¶ 42. Counsel discussed a receipt he intended to present, which he called "the most telling piece of evidence[.]" Sup5 R. 69. The receipt had been found in the Sanchez's jacket when his body was recovered. *Martinez II* at ¶ 21. It was from Aguascalientes Restaurant, dated December 27, 2000, at 8:24 p.m., so within the "crucial timeframe" developed from Reyes' testimony, and it proved that Sanchez was alive at the restaurant at that time. *Id.* at ¶¶ 21, 42; R. 547.

After the State rested, the defense sought the admission of the restaurant receipt into evidence. Sup5 R. 527. The court, however, ruled that the receipt was not substantively admissible because it was hearsay. Sup5 R. 528. Instead of laying the proper foundation for admission of the receipt as a business record, defense counsel simply agreed and did not pursue the receipt's admission. Sup5 R. 528.

Acknowledging that the case against Petitioner was entirely circumstantial and that a lot of evidence could cut both ways, the trial court credited Reyes' testimony, convicted Petitioner based upon it, and sentenced him to 50 years in prison. Sup5 R. 578-82; *Martinez II* at ¶ 16.

On post-conviction, Petitioner presented: (1) Narbaiz's testimony denying Reyes' motive allegation about an unpaid debt and denying Reyes' claim that Petitioner asked Narbaiz and Reyes to kill Sanchez (R. 429-32); (2) Martha Macias, from Aguascalientes restaurant, to establish a foundation for the restaurant receipt as a business record excepted from the hearsay rule (C. 880, 918-19); (3) Petitioner's mother, Maritza Amaya, who testified that Petitioner had returned home the evening of December 27th at 9:00 p.m. and explained she did not know at the time of trial that that information was significant to the case because she did not know about the

existence of the restaurant receipt (R. 365-66, 370, 374, 376-78); (4) Petitioner's own testimony about his trial attorney's failure to involve him in his defense and Petitioner's unsuccessful efforts to get his attorney to call Narbaiz and his mother as defense witnesses (R.450-56); (5) Pablo Amaya, Petitioner's stepfather, who had not seen or spoken to Petitioner in fifteen years and who corroborated Maritza's account of what time Petitioner returned home on December 27th (C. 878-79, 911-17; R. 292); and (6) Google-generated maps establishing the distances and driving times at issue (Sup 2 C 203-05).

The State presented Petitioner's former counsel as its sole witness at the evidentiary hearing. At the time of counsel's testimony, the Cook County State's Attorney's Office was in various stages of prosecuting multiple individuals in a murder conspiracy and solicitation case. Sup2 C. 77. In that case, according to a sworn search warrant executed by the Cook County State's Attorney's Office, Petitioner's former attorney was alleged to have aided one of his clients in targeting an adverse witness for murder. Sup2 C. 77-82. Despite the seriousness of the State's accusations against Petitioner's former counsel, the court circuit barred any discovery exploring his potential criminal exposure and whether counsel was beholden to the State. Sup3 R. 711. The court also did not allow Petitioner to elicit his attorney's potential incentives to testify falsely.

Petitioner's former defense attorney testified on post-conviction that he decided not to present Narbaiz at trial because the State's Attorney's report he had received in pre-trial discovery (*i.e.*, before opening statements) made her potential testimony seem contrived. R. 509. Nevertheless, in his opening statement at trial defense counsel discussed her upcoming testimony as a witness who would impeach Reyes. *See* Sup5 R 73 (opening statement describing Narbaiz's expected testimony); R. 560 (Q: "[You said] in opening statement that Rachel [Narbaiz] denied

the claim right? A: Yes."); R. 560 (defense counsel admitting that he promised Narbaiz's testimony in opening based on what she had said in the investigative report).[3] Counsel also claimed that he spoke to Narbaiz at the courthouse during the trial, impacting his decision not to call her; Narbaiz, in contrast, testified that she never spoke with counsel and did not attend the trial (nor was there ever any reason for her to attend unless she was subpoenaed). R. 558, 566, 431-32.

With regards to his failure to lay a foundation for the restaurant receipt, counsel acknowledged that he was aware of the business record exception to the hearsay rule but admitted that he never tried to lay the foundation for the receipt's admission as substantive evidence. R. 549-51, 583. He acknowledged that it was the substantive information on the receipt—or the hearsay—that made it the receipt so "telling," as he described in his opening statement. R. 521-22. Counsel also admitted that he had the ability before trial to find out how long it would take to get from Reyes' house to Aguascalientes restaurant to Sundown Forest Preserve and back to Martinez's mother's house—he simply failed to do so. R. 539, 542.

## II. The Relevant Portions of the Appellate Court Ruling Adjudicating Edwin Martinez's Petition for Post-Conviction Relief

After setting forth the familiar requirements of *Strickland v. Washington*, 466 U.S. 668 (1984), for an ineffective assistance of counsel claim, the appellate court emphasized that "[d]ecisions involving what evidence to present and which witnesses to call fall within the broad category of trial strategy and are not subject to a claim of ineffective assistance unless they deprive a defendant of a meaningful adversary proceeding." *Martinez IV* at ¶ 61 (quoting *People v. Smith*, 2012 IL App (1st) 102354, ¶ 86). The court went on to hold, "Only if counsel's trial

___

[3] The transcript refers to the witness at issue as "Rashem," During his post-conviction testimony defense counsel explicitly testified this was a court reporter error and he was referring to Rachel Narbaiz. R. 558-59.

strategy is so unsound that he entirely fails to conduct meaningful adversarial testing of the State's case will ineffective assistance of counsel by found." *Id.* at ¶ 62 (quoting *People v. Perry*, 224 Ill.2d 312, 355-56 (2007)).

With regards to defense counsel's failure to call Rachel Narbaiz to impeach Reyes, the appellate court found that although defense counsel discussed Narbaiz's testimony in opening statement, counsel's contention that he did not call her based on information in the original police report that might have made her testimony look "kind of staged" (Narbaiz dated Petitioner's brother) meant the decision not to call her was attributable to trial strategy. *Id.* at ¶ 74. This ruling was also based on the trial court's crediting of counsel's claim—vehemently denied by Narbaiz—that counsel interviewed Narbaiz sometime prior to presenting her expected testimony in opening statement. *Id.* at ¶ 70.

As for the restaurant receipt and the maps establishing the driving distances at issue, the appellate court did not address the deficiency prong of the *Strickland* analysis. Instead, implicitly recognizing counsel's inadequate performance, the court rejected the claim on prejudice grounds, holding that even if defense counsel's lapse "fell below an objective standard of reasonableness …. The circuit court did not manifestly err in finding that defendant has not met his burden to establish prejudice by creating a reasonable probability that, but for the presentation of this testimony, the trial result would have been different." *Id.* at ¶ 82.

Similarly, the appellate court did not adjudicate whether counsel's failure to interview Petitioner's mother and stepfather about what time he arrived home that night was deficient performance, holding, "Regardless of the resolution of the first prong of the *Strickland* test as to the failure to present this evidence, defendant has not met his burden to establish a reasonable

probability that, but for the failure to present this testimony, the trial result would have been different." *Id.* at ¶ 75 (citation omitted).

In adjudicating prejudice, the appellate court did not specifically address the impact of Narbaiz's potential testimony as it relates to prejudice, but the court found that defense counsel's concerns about Narbaiz's credibility and potential bias were sound. *Id.* at ¶ 74. The appellate court also found that credibility concerns about Maritza and Pablo Amaya meant that Petitioner "has not met his burden to establish prejudice by creating a reasonable probability that, but for the presentation of this testimony, the trial result would have been different." *Id.* at ¶ 80. Finally, in considering the restaurant receipt, the appellate court found that the record custodian's testimony at the post-conviction evidentiary hearing fifteen years after the receipt was issued could only speak to how receipts were "usually" printed, and she had "no independent, first-hand knowledge as to when and under what circumstances the receipt was printed" fifteen years prior. *Id.* at ¶ 83. The appellate court also complained that maps indicating driving times in 2016 (the time of the evidentiary hearing) might be inconsistent with the times from defendant's trial in 2003. *Id.* at ¶ 84. The appellate court credited a circuit court finding that the receipt might actually support the State's timeline and found no prejudice from its omission. *Id.*

## ARGUMENT

### I.      Legal Standards for Adjudicating this Petition

#### A.      The Standards for *Habeas* Relief

Petitions for habeas relief are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2242 *et seq.* Under the AEDPA, a federal court may grant *habeas* relief when a state court's decision was (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

10

United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)(2). "The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Dunn v. Jess*, 981 F.3d 582, 591 (7th Cir. 2020) (citations omitted).

A state court decision is "contrary to" clearly established federal law where it is "substantially different from the relevant precedent" of the Supreme Court. *Mosley v. Atchison*, 689 F.3d 838, 844 (7th Cir. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state-court decision "unreasonably applies federal law if it correctly identifies the governing Supreme Court precedent but unreasonably applies its holding to the facts of the case." *Dunn*, 981 F.3d at 590-91. This Court conducts a *de novo* review of the state court's decision. *Mosley*, 689 F.3d at 844. The Court's review is limited to the record that was before the state court that last adjudicated the claim on the merits. *Mosley*, 689 F.3d at 844 (citing *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)).

The last state court to adjudicate the merits of the Petitioner's ineffective assistance of counsel claim was the Illinois Appellate Court in *People v. Martinez,* 2021 IL App (1st) 1711533-UB, leave for appeal denied *People v. Martinez*, 175 N.E.3d 97 (2021). The appellate court's order dismissed Petitioner's appeal of the third-stage denial of post-conviction relief. Petitioner submits his ineffective assistance of counsel claims to this Court for review.

**B.      The Standard for Ineffective Assistance of Counsel Claims Under *Strickland***

The Constitution's Sixth Amendment provides an accused with a right to effective assistance of counsel. *Campbell v. Reardon*, 780 F.3d 752, 762 (7th Cir. 2015). The familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs an accused's ineffective assistance of counsel claims. Under *Strickland*, a petitioner must show: (1) that his

counsel's performance was deficient because it "fell below an objective standard of reasonableness," *Campbell*, 780 F.3d at 762 (citing *Strickland*, 466 U.S. at 687-88); and (2) that the deficient performance prejudiced the defense, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (citing *Strickland*, 466 U.S. at 694).

A petitioner demonstrates deficient performance under *Strickland* by identifying "acts or omissions by counsel that fell below an objective standard of reasonableness and could not have been the result of professional judgment." *Campbell*, 780 F.3d at 762 (citing *Strickland*, 466 U.S. at 688, 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (citing *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690)).

To prove deficiency, a petitioner will need to overcome the presumption that "the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. But, importantly, "A court adjudicating a *Strickland* claim can't just label a decision 'strategic' and thereby immunize it from constitutional scrutiny." *Jones v. Calloway*, 842 F.3d 454, 464 (7th Cir. 2016) (finding that the state court unreasonably applied *Strickland* by classifying counsel's failure to present a necessary witness as a strategic trial choice); *see also Mosley*, 689 F.3d at 848 ("The consequences of inattention rather than reasoned strategic decisions are not entitled to the presumption of reasonableness.") (citation omitted).

Quite simply, prevailing professional norms require both investigation of an accused's defense and presentation of known exculpatory evidence as essential components of constitutionally adequate representation. *See, e.g., Williams*, 529 U.S. at 395 (counsel's failure to

12

investigate constituted deficient performance); *Washington v. Smith*, 219 F.3d 620, 630-32 (7th Cir. 2000) (state court unreasonably applied *Strickland* in finding that counsel was not deficient based on his failure to adequately investigate the case and present a defense witness); *Davis v. Lambert*, 388 F.3d 1052, 1062-64 (7th Cir. 2004) (state courts' finding that defense counsel was not deficient was an unreasonable application of the *Strickland* deficiency prong where counsel failed to investigate and present defense witnesses); *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 252-55 (7th Cir. 2003) (failure to investigate exculpatory eyewitnesses was objectively unreasonable, and state court's finding to the contrary was unreasonable application of *Strickland*). For instance, in *Dunn*, the Seventh Circuit held that the state court unreasonably applied *Strickland* where defense counsel "was poorly informed and based his strategic decisions on a complete misunderstanding of a key piece of evidence[.]" 981 F.3d at 592. *See also Stitts v. Wilson,* 713 F.3d 887, 891 (7th Cir. 2013) ("If trial counsel's investigation of a potential alibi defense was unreasonably limited, then trial counsel's decision not to present an alibi defense is too ill-informed to be considered reasonable.").

Counsel's promise to deliver certain evidence in opening argument and then failure to deliver can also be indicative of deficient performance and undermine counsel's claim that a lapse was due to trial strategy. *See, e.g., Hampton*, 347 F.3d at 259 (state court's determination that it was reasonable for defense counsel "to make and then break these promises as a matter of evolving trial strategy was unreasonable. Making such promises and then abandoning them for reasons that were apparent at the time the promises were made cannot be described as legitimate trial strategy.").

As for the prejudice prong of the *Strickland* analysis, it is important to note that, in cases like this one, "a verdict or conclusion only weakly supported by the record is more likely to have

been affected by errors than one with overwhelming record support.", 219 F.3d at 633 (citing *Strickland*, 466 U.S. at 696). In assessing prejudice, the Court must look to "'the totality of the omitted evidence' under *Strickland* rather than the individual errors." *Washington*, 219 F.3d at 634-35 (quoting *Williams*). "A reasonable probability" that the results of the proceeding would have been different is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This does not, however, require a petitioner to prove that his "counsel's deficient conduct more likely than not altered the outcome in the case," *id*. at 693, but the "likelihood of a different result must be substantial, not just conceivable." *Dunn*, 981 F.3d at 595 (citing *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

## II.     Grounds for Relief

### Ground 1: The State Court's Decision to Affirm Denial of Petitioner's Ineffective Assistance of Trial Counsel Claim Was an Unreasonable Application of *Strickland*

#### A. The State Court's Deficiency Adjudications Incorporate an Unreasonable Application of *Strickland*

##### 1.     The State Court's Failure to Find Deficient Performance in Counsel's Inability to Provide a Foundation for Admission of the Crucial Restaurant Receipt Was an Unreasonable Application of *Strickland*

Defense counsel argued in his opening statement that the Aguascalientes restaurant receipt was "the most telling piece of evidence that has been completely overlooked," Sup5 R. 69, precisely because of the date, time, and address on it disproved the timeline offered by the State's only inculpatory witness. Sup5 R. 539-40. Defense counsel recognized that this crucial piece of evidence was the best way to disprove the State's theory of the case—that Petitioner committed the murder during a very narrow window of time. But because counsel did not utilize or understand the business records exception to the hearsay rule, he was unable to actually secure admission of the receipt. Counsel's failure to present someone from the restaurant who could

14

have established the foundation for this key piece of evidence was a constitutionally deficient lapse.

The appellate court did not adjudicate counsel's deficient performance for this lapse, instead skipping directly to the prejudice analysis. *See Martinez IV* at ¶ 82. But counsel's failure to present this evidence he acknowledged as key to the defense (Sup5 R. 69), was unquestionably constitutionally deficient performance. *See Dixon v. Snyder*, 266 F.3d 693, 701 (7th Cir. 2001) (counsel's ignorance of the relevant law governing the admissible trial evidence objectively deficient under *Strickland*).

2. **The State Court's Failure to Find Defense Counsel Deficient—Where Counsel Recognized Rachel Narbaiz as a Key Witness in This Closely Balanced Case, But Then Failed to Call Her at Trial—Was Also an Unreasonable Application of *Strickland***

Adam Reyes was the original suspect in this murder. He successfully deflected any responsibility or criminal liability for this crime by pointing the finger at Petitioner, but there was never any evidence or witness who corroborated Reyes' allegations. With the entire case hinging on Reyes' reliability, Rachel Narbaiz could have testified that Reyes lied both when he invented a monetary motive for Petitioner and when he claimed that Petitioner had solicited Reyes and Narbaiz to kill Sanchez the week before the crime. Narbaiz had no stake in this case—she had not spoken to Petitioner or Reyes in 16 years at the time of the post-conviction evidentiary hearing—but she unequivocally denied Reyes' trial testimony that Petitioner asked her and Reyes to kill Sanchez and that Reyes and she discussed Sanchez owing Petitioner money. R. 431-32. Defense counsel knew of this important impeachment evidence and integrated it into his defense, claiming in opening argument that Narbaiz would deny the allegations. Sup.5 R.73-74.

The appellate court, however, credited counsel's claim that he made a "strategic choice" not to call Narbaiz, based on information that he learned from the pre-trial discovery police

15

report: that Narbaiz was dating Petitioner's brother and was initially interviewed by the police in

the brother's presence. *Martinez IV* at ¶ 74. It was unreasonable for the appellate court to credit

this patently pretextual reason for counsel's failure to present Narbaiz as trial strategy to avoid

finding counsel deficient for his lapse: defense counsel knew of the prior relationship <u>before</u> he

discussed Narbaiz's testimony in opening statement. Moreover, Narbaiz testified that counsel not

only failed to call her to testify, he never even bothered to interview her. R. 431-32.

The Seventh Circuit's ruling in *Jones* is instructive, with its admonition cautioning

against courts just labeling decisions as "strategic" to immunize them from constitutional

scrutiny. *Jones*, 842 F.3d at 464. The *Jones* Court was emphatic that for reasonable application

of *Strickland*, "a defense attorney's failure to present a material exculpatory witness of which he

was aware qualifies as deficient performance." *Id.* (collecting cases). And the *Hampton* court

was equally so when it noted an appellate court cannot simply label it "evolving trial strategy"

when defense counsel abandons a promise in opening statements when the claimed strategic

change was readily apparent at the time of the promise was made. 347 F. 3d at 259. Here, in a

case that hinged entirely on the uncorroborated testimony of a former suspect of the crime—a

witness who admitted to procuring the gun for the murder—Rachel Narbaiz's testimony

impeaching him was material exculpatory evidence, and there was simply no downside to

presenting the evidence, which only could have helped the defense. *Id.*; *see also Washington*,

219 F.3d at 630-32 (unreasonable application of *Strickland* in finding no deficient performance

where counsel failed to present defense witness); *Davis*, 388 F.3d at 1062-64 (same); *Hampton*,

347 F.3d at 252-55 (unreasonable application of *Strickland* where deficient performance

demonstrated by failure to investigate exculpatory eyewitnesses); *Dunn*, 981 F.3d at 592; *Stitts,*

713 F.3d at 891 ("If trial counsel's investigation of a potential alibi defense was unreasonably

limited, then trial counsel's decision not to present an alibi defense is too ill-informed to be considered reasonable.").

The state court's application of *Strickland* was unreasonable in finding that counsel utilized trial strategy in failing to call Narbaiz, instead of demonstrating deficient performance.

### 3. Reasonable Application of *Strickland* Also Required the State Court to Find Counsel Deficient for Failing to Present Maritza and Pablo Amaya

Although silent on the subject, the state court did not refute that defense counsel was constitutionally deficient for failing to interview Petitioner's alibi witnesses Maritza and Pablo Amaya. The Amayas established what time Petitioner came home on the evening in question. That testimony—coupled with the restaurant receipt showing what time Sanchez was alive, the maps showing the driving distances at issue, and the known facts about where and how the crime was committed—would have rendered Petitioner's culpability extremely improbable if not flat out impossible. Counsel's failure to interview and present these witnesses to directly refute the State's timeline of the murder in this closely balanced case was constitutionally deficient performance under *Strickland*. *Id.*

Although family, these two witnesses would have been weighed against Reyes, who was a highly incentivized witness, in a case where the appellate court recognized there were no eyewitnesses, physical evidence, other motive witness, inculpatory statement, or other evidence that Petitioner murdered Sanchez aside from Reyes' incentivized testimony. *See, e.g.*, C. 762, ¶ 34; C. 766, ¶ 45; C. 763, ¶ 38; *Martinez IV* at ¶ 88. Reasonable application of *Strickland* required a deficiency finding regarding counsel's failure to interview and call Maritza and Pablo Amaya as alibi witnesses. *See, e.g., Raygoza v. Hulick*, 474 F.3d 958, 963-64 (7th Cir. 2007) (defense counsel's failure to interview and call alibi witnesses just because they were related to the defendant was deficient performance under a reasonable application of *Strickland*).

17

**B.** **The Appellate Court's Piecemeal and Erroneous Adjudication of Prejudice Was an Unreasonable Application of *Strickland***

To properly apply *Strickland*'s prejudice assessment, the court "must consider the evidence in its totality." *Malone v. Walls*, 538 F.3d 744, 759 (7th Cir. 2008) (citation omitted). And, as noted above, a verdict supported by weak evidence "is more likely to have been affected by errors than one with overwhelming record support." *Williams*, 59 F.3d at 684. When the totality of the evidence is considered it is apparent that the appellate court did not reasonably apply the *Strickland* prejudice standard.

On one side of that assessment, the evidence that was presented at the original criminal trial was particularly weak—indeed, noteworthily so, leading the Illinois Appellate Court to repeatedly acknowledge that this was an extremely close case. *See, e.g.*, *Martinez II* at ¶ 45 ("the evidence in this case was closely balanced"); *id.* at ¶ 38 ("The State's case against defendant was largely circumstantial"). And that closeness assessment is well-founded: Martinez's conviction necessarily relies on the improbable and wholly circumstantial testimony of Adam Reyes, an uncharged accomplice and felon who—by his account—provided the gun for commission of this murder. *Id.* at ¶ 38. Reyes' claim that Martinez committed the murder—testimony he offered in exchange for an agreement that the State would not charge or prosecute him for a role in the crime—was uncorroborated by any physical evidence or additional witness in support. Sup5 R 172.[4]

---

[4] On redirect examination, Reyes denied having "a written agreement" or express promise that he would not be charged. Sup5 R 204-07. But on recross examination, he reiterated that it was his understanding that if he testified consistent with what he had said previously, he "wouldn't be charged with anything." Sup5 R 211. Much has been written about the prosecution's use of an implied promise of leniency, which allows a witness to deny having a formal agreement, even as the witness is led to understand that if he testifies as asked, he will not be charged. *See, e.g.,*

This highly incentivized testimony should be met with grave skepticism. In *United States v. Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987), the Court observed, "No practice is more ingrained in our criminal justice system than the practice of the government calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea bargain that promises him a reduced sentence. It is difficult to imagine a greater motivation to lie than the inducement of a reduced sentence[.]" That motivation to lie increases exponentially where, as here, the witness was offered not just a reduced sentence, but no criminal liability whatsoever for his admitted involvement in the crime. *See* The Honorable Stephen S. Trott, *Words of Warning for Prosecutors Using Criminals As Witnesses*, 47 Hastings L.J. 1381, 1383 (1996) ("Criminals are likely to say and do almost anything to get what they want, especially when what they want is to get out of trouble with the law. This willingness to do anything includes … lying, committing perjury, manufacturing evidence, soliciting others to corroborate their lies with more lies, and double-crossing anyone with whom they come into contact[.]"); *On Lee v. United States*, 343 U.S. 747, 757 (1952) ("The use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility.").

On the other side of the assessment, the evidence not presented at trial was credible, powerful, and directly material to defense counsel's stated trial theory of attacking Reyes'

---

David A. Harris, *Snitching: Criminal Informants and the Erosion of American Justice*, Crim. Just., Spring 2010, at 44-45 (deals from prosecutors "are typically structured precisely to permit the witness truthfully to deny the existence of any formal *quid pro quo*. Nonetheless, there is often a fair amount of informal bargaining between prosecutors and witnesses that takes place prior to the agreement to testify….there is at minimum an unspoken promise…."); Eli Paul Mazur, *Rational Expectations of Leniency: Implicit Plea Agreements and the Prosecutor's Role As A Minister of Justice*, 51 Duke L.J. 1333, 1336 (2002) ("Research shows that witnesses are more likely to lie, more likely to cooperate, and more likely to fabricate when agents of the state make implicit rather than explicit promises of leniency.").

sketchy credibility. *See* R. 543 (defense counsel's theory was that Reyes was not a reliable witness); R. 543-44 (defense counsel argued to the court that Reyes was an "expert deceiver"); R. 544 (counsel's strategy was to impeach Reyes' credibility).

Despite that strategy, counsel neglected to present: (1) foundation for admission of the restaurant receipt, which in his mind was "the most telling piece of evidence" and would have cast serious doubt on Reyes' claim about Martinez picking up a gun from him on the night of the murder, making it "improbable defendant committed the murder," according the state appellate court (*Martinez II* at ¶ 1); (2) foundation for the admission of the restaurant receipt, along with the driving maps and the Amayas' testimony, which would have demonstrated that it was impossible Martinez committed the murder during the window of time that Reyes alleged; and (3) testimony from Rachel Narbaiz, which would have destroyed Reyes' already shaky credibility by refuting his claims that Martinez had solicited Reyes and Narbaiz to commit the murder and that they had discussed Martinez's supposed motive for the murder. Any one of these three readily available and known defenses, alone, likely would have tipped the scales on this closely balanced case. Together they establish that the state court was unreasonable in finding insufficient prejudice for ineffective assistance of counsel.

Specifically, Reyes testified at trial that Petitioner called him at around 7:30 p.m. to discuss picking up the gun (phone record establish that a call was placed from Sanchez's phone to Reyes' at 7:32 p.m.), and that Petitioner and a man Reyes presumed to be Sanchez showed up at Reyes' home twenty to thirty minutes later (accordingly, between 7:52 and 8:02 p.m.). Sup5 R 157-60; C. 175. The Google map showing driving distances and times shows that under ideal circumstances, the drive from Reyes' house to Taqueria Aguascalientes would take 10 to 13 minutes, depending on the chosen route. Sup2 C 203. Because this was a December night in the

Chicago area, a trier-of-fact could safely presume that driving conditions were not more optimal than those presumed by Google based on mileage and speed limits. This put Sanchez at the restaurant sometime between 8:02 p.m. and 8:12 p.m., at the very earliest, according to Reyes' testimony.

Martha Macias testified that the restaurant was a family business and that she had worked there her whole life, including in December 2000. R. 330-31. The restaurant printed receipts in the regular course of business, they were printed and brought to the table when the customers finished their meal, and the time printed on the receipt accurately reflected when the receipt was printed. R. 331-32. Macias examined the receipt found in Sanchez's pocket and explained that it was printed in the regular course of business on December 27, 2000, at 8:24 p.m.

This means that Reyes' testimony pinning the murder on Martinez could only be true if all of the stars perfectly aligned: (1) if Martinez arrived at Reyes' house at 7:52, not 8:02, and thus left at the earliest at around 8:04 (because, according to Reyes' testimony, Martinez came up to the front door and had a conversation with Reyes, *Martinez II* at ¶ 4; Sup5 R 158); (2) if Martinez picked the fastest route to the restaurant, and there were no added delays from weather or winter holiday traffic beyond the minimum ten minute drive time established by the Google map (getting them to the restaurant at 8:14 p.m.); (3) if, as the court baldly speculated, this was in fact actually a take-out order instead of a dine-in experience, despite no witness, evidence, or even argument by the State or trial defense counsel ever suggesting take-out or its possibility as a reason not to present the evidence (*see Harris v. Reed*, 894 F.2d 871, 878 (7th Cir. 1990) ("Just as a reviewing court should not second guess the strategic decisions of counsel with the benefit of hindsight, it should also not construct strategic defenses which counsel does not offer.")); and

21

(4) if Petitioner found easy parking, the restaurant had no line, and the large food order was completed in under ten minutes, by 8:24 p.m.

As the state appellate court originally found, the near impossibility of this timeline makes it "improbable defendant committed the murder." *Martinez II* at ¶ 1. Defense counsel acknowledged the same when he called this receipt in opening statements "the most telling piece of evidence." Sup5 R 69. *See also* R. 520-21 (defense counsel admitted that he called the receipt the "most telling piece of evidence" because of the State's tight timeline); R. 539-40 (defense counsel admitting that the receipt was "telling" because it established the date and time when the decedent was at the restaurant); R. 545 (same).

Then, even if all the stars aligned and the state court's speculation about take-out dining were true, the drive from the restaurant to the forest preserve where the murder took place (again, under pristine driving conditions) was still 10.8 miles, 19 minutes, making the earliest possible arrival time 8:43 p.m. Sup2 C 204. The trip from the forest to Petitioner's home was 10.8 miles (clocked by Google at 28 to 32 minutes, depending on the route), making the earliest possible arrival time at home, 9:11 p.m. Sup2 C 205. Added to that, of course, is the additional time for: paying the restaurant check, walking from the restaurant to the car, exiting the car and leading Sanchez into the woods, committing the murder (which appeared to involve a chase given the blood trail), returning to the car, and parking at home, all extending the earliest possible timing long beyond 9:11 p.m. of a return home, were prosecution witness Reyes' testimony accepted. Sup 2C 205.

Pablo Amaya's testimony upon remand corroborated Martiza Amaya's post-conviction testimony that Martinez was home by 9:00 p.m. on the night of the shooting. If a jury chose to credit the Amayas' testimony, it was impossible that Petitioner shot Sanchez in the forest

preserve after the restaurant. Importantly, the circuit court did not find Pablo Amaya's testimony to be incredible, nor was there reason to doubt him. Pablo had believable reasons for remembering Martinez's timing that night: as a factory shift worker, Pablo had a set routine for when he went to bed every night, and the night in question was particularly memorable because of visiting relatives from abroad that included a new baby. Sup6 C 43-44, 63, 66. Pablo also did not get along with Petitioner and has had no contact with him in almost twenty years, giving his testimony no bias and additional credibility. Sup6 C 41-42, 46.

Add to that, Narbaiz's impeachment of Reyes. Her testimony denying Reyes' claims was consistent with what: she told the police back in 2000 (C. 109-10); she told Cook County investigators in 2002 (C. 503-04); and she stated in a post-conviction affidavit in 2010 (C. 505-06). Narbaiz would have impeached an incentivized, uncorroborated witness who provided the only inculpation of Petitioner. The omission of her testimony was highly prejudicial.

As in *Malone*, 538 F.3d at 760, the state court's failure to find prejudice was an unreasonable application of *Strickland* on this record in this closely balanced case. In *Malone*, the appellate court '"turned a blind eye' both to the nature of the State's case and to the importance of [the omitted] testimony." *Id.* (citing *Hampton*, 347 F.3d at 256). By "gloss[ing] over" the accuser's principal weakness and discounting the impeachment value of the omitted testimony, the state court failed to properly apply *Strickland. Id.* The same result is required here.

Instead, the state court impermissibly took a piecemeal approach to prejudice, assessing each piece of evidence individually. The court penalized Petitioner for the passage of time, holding that a record custodian or driving records years after the fact are less reliable than the evidence would have been if counsel had provided it back at the time of the original trial. This Catch-22 approach is contrary to the spirit of *Strickland*, the reasons for the business records

23

hearsay exception, and common sense. Petitioner cannot go back in time. The distances between two locations are fixed GPS coordinates that do not change. And the whole point of the business record exception is that the records are uniquely reliable because they are made "in normal course," which receipts plainly are (and Macias testified as such). *See U.S. v. Miller*, 547 F.3d 718, 720 (7th Cir. 2008). All Petitioenr can do belatedly is prove his claim with the witnesses and information now available to show that this would have been a viable defense, had counsel presented it back when the witnesses and evidence were fresh. A reasonable application of *Strickland*, assessing the prejudice collectively, clearly demonstrates a reasonable likelihood that the outcome of the trial would have been different had counsel presented Petitioner's defense. Accordingly, Petitioner respectfully asks this Court to grant him *habeas* relief.

### Ground 2: The State Court's Definition of Deficient Performance Was, in and of Itself, Contrary to or an Unreasonable Application of *Strickland*

The state appellate court held, "Decisions involving what evidence to present and which witnesses to call fall within the broad category of trial strategy and are not subject to a claim of ineffective assistance unless they deprive a defendant of a meaningful adversary proceeding." *Martinez IV* at ¶ 61 (quoting *People v. Smith*, 2012 IL App (1st) 102354, ¶ 86). The court went on to hold, "Only if counsel's trial strategy is so unsound that he entirely fails to conduct meaningful adversarial testing of the State's case will ineffective assistance of counsel by found." *Martinez IV* at ¶ 62 (quoting *People v. Perry*, 224 Ill.2d 312, 355-56 (2007)). As the Seventh Circuit's decision in *Jones* indicates, the state court's framework was an unreasonable interpretation of *Strickland. Jones v. Calloway*, 842 F.3d 454, 464 (7th Cir. 2016).

Specifically, in *Jones*, similar to here, the state appellate court "classified the defense attorney's decision not to call Stone as a mere choice of trial strategy and held that decisions of this sort are 'generally immune' from scrutiny unless counsel 'entirely fail[ed]' to subject the

prosecution's case to 'meaningful adversarial testing.'" *Id.* The *Jones* Court expressly held, "That was an unreasonable application of *Strickland*[.]" *Id.* Under *Strickland*, there is "a deferential presumption that strategic judgments made by defense counsel are reasonable." *Id.* (citing *Mosley*, 689 F.3d at 848). But, as the *Jones* Court observed, defense counsel's decisions "are not immune from examination simply because they are deemed tactical." *Id.* (citing *Hampton*, 347 F.3d at 249). Accordingly, in constructing the deficiency question as it did, "The state appellate court treated the *Strickland* presumption as essentially unrebuttable. That … was clearly contrary to *Strickland*." *Jones*, 842 F.3d at 464.

Indeed, the state appellate court's framework for analyzing the deficiency of trial strategy under *Strickland* is absent from the federal case law entirely. Certainly, cases discuss the lack of "meaningful adversarial testing" as a presumptive indication of prejudice. *See, e.g., Lewis v. Zatecky*, 993 F.3d 994, 1001 (7th Cir. 2021), cert. denied sub nom. *Reagle v. Lewis*, No. 21-538, 2022 WL 199384 (U.S. Jan. 24, 2022); *McDowell v. Kingston*, 497 F.3d 757, 763 (7th Cir. 2007). But the state court's attempt to use that standard as a burden to prove deficient performance is without precedent. This unreasonable application of *Strickland* or ruling contrary to *Strickland* also warrants relief, as it led to the state court's rejection of a meritorious claim for ineffective assistance of counsel.

## CONCLUSION

Petitioner's more than decade-long post-conviction journey through the state court plainly establishes he received ineffective assistance of counsel. The First District Appellate Court's ultimate decision otherwise is an unreasonable application of *Strickland v. Washington*. This Court should grant vacate Petitioner's conviction and, after two-decades of incarceration based upon a plainly unconstitutional conviction, order a bond hearing.

Respectfully Submittted,


/s/ Debra Loevy
Atty for Edwin Martinez

Debra Loevy
Joshua Tepfer
The Exoneration Project
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 789-4955
*Counsel for Petitioner*